2020 IL App (2d) 180158-U
No. 2-18-0158
Order filed November 9, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Kendall County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-CF-260 |
| | ) | |
| SHARON MITCHELL, | ) | Honorable |
| | ) | Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Trial court's instruction of the jury was not improper, and trial court adequately
            considered and rejected all factors in mitigation.

¶ 2                                     I. INTRODUCTION

¶ 3     Following a jury trial in the circuit court of Kendall County, defendant, Sharon Mitchell,

was convicted of one count of violating a no-contact order (740 ILCS 21/125 (West 2016)).  She

was sentenced to 24-months' probation.  Defendant now appeals, arguing that the trial court erred

in instructing the jury regarding the elements of the offense and by, in the sentencing phase, finding

that there were no mitigating factors when her conduct did not cause or threaten serious physical harm. For the reasons that follow, we affirm.

¶ 4                                    II. BACKGROUND

¶ 5     The issues presented by this appeal are narrow, and defendant does not challenge the sufficiency of the evidence. Therefore, we present the following brief review of the events underlying defendant's conviction to facilitate an understanding of this case and discuss the facts relevant to the issues raised by defendant as we resolve them.

¶ 6     Defendant was charged with two counts of the violation of a stalking/no-contact order. 740 ILCS 21/125 (West 2016). Trisha Hutson, the victim, had obtained a no-contact order, which prohibited defendant from coming within 100 feet of Hutson's home. Hutson reported to the police that defendant had violated the order on multiple occasions on August 21, 2017. When the police arrived, defendant was in the middle of the street in front of Hutson's home. She appeared to be attempting to view an eclipse through some sort of device. The police instructed defendant to return to her home, and she complied. However, after they left, Hutson, with her cell phone camera, recorded defendant in the middle of the road again. The police returned, and defendant was seen sitting in front of her own house.

¶ 7     Later the same day, Hutson observed defendant in the street. She appeared to be examining the engine of a vehicle. Another vehicle was also parked, nose-to-nose, with the vehicle defendant was examining. The hoods of both vehicles were open. Defendant stood on the curb. The vehicles were parked on the same side of the street as Hutson's house, though not directly in front of it. Hutson again contacted the police. The police arrived and took measurements to the vehicles and to where defendant was observed during the earlier incidents. The measurements

indicated that defendant was as close as 63 feet of Hutson's home during the earlier incidents and about 80 feet away when she stood by the vehicle.

¶ 8    Defendant was convicted of violating the no-contact order obtained by Hutson and sentenced to 24-months' probation.  She now appeals.

¶ 9                                   II. ANALYSIS

¶ 10    On appeal, defendant raises two issues.  First, she contends that the trial court erred by instructing the jury that defendant could be found guilty if, *inter alia*, the State proved that she was served notice of the no-contact order rather than requiring the State to prove that defendant was served notice *of the contents* of the no-contact order.  Second, she argues that the trial court incorrectly determined that there were no mitigating factors pertinent to sentencing when her conduct neither caused nor threatened serious physical harm.

¶ 11                            A. THE JURY INSTRUCTION

¶ 12    Defendant first contends that the trial court improperly instructed the jury as it pertained to the State's obligation to provide defendant with notice of the no-contact order.  Whether to give a particular instruction to the jury is a matter within the discretion of the trial court.  *People v. Hudson*, 222 Ill. 2d 392, 400 (2006).  An abuse of discretion occurs only if no reasonable person could agree with the trial court's decision.  *In re Marriage of Hall*, 278 Ill. App. 3d 782, 785 (1996).  However, we review *de novo* the issue of whether an instruction properly conveyed the law to the jury.  *People v. Parker*, 223 Ill. 2d 494, 501 (2006).  Moreover, "Jury instructions should be construed as a whole, rather than read in isolation."  *Id*.

¶ 13    Defendant points out that in 2017, the statute she was charged with violating simply provided, "An initial knowing violation of a stalking/no contact order is a Class A misdemeanor. A second or subsequent knowing violation is a Class 4 felony."  725 ILCS 21/125 (West 2016).

No pattern jury instruction defined the elements of the offense at this time. Accordingly, at trial, the State proposed using a modified version of the Illinois Pattern Jury Instruction pertaining to the violation of an order of protection. See Illinois Pattern Jury Instructions, Criminal, No. 11.78 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 11.78). Defendant did not object and, in fact, proposed an additional modification that was incorporated into the instruction.

¶ 14    Pertinent here is the fourth element of the offense, which is defined in IPI Criminal 4th No. 11.78—as it pertained to orders of protection—as, "That at the time the defendant [committed the prohibited act], he had been served notice *of the contents* of an order of protection or otherwise had acquired actual knowledge of the contents of the order." (Emphasis added.) Here, the trial court instructed the jury as follows: "That at the time the defendant came within 100 feet of Trisha Hutson's residence, [s]he had been served notice of the stalking/no contact order or otherwise had acquired actual knowledge of the contents of the order." Here, it is important to note that the italicized language of the pattern instruction for violations of orders of protection is omitted in the version of the modified instruction given by the trial court.

¶ 15    As noted, defendant failed to object to this instruction. Therefore, we are now limited to conducting plain-error review. See *People v. Herron*, 215 Ill. 2d 167, 181-82 (2005). Plain error may be shown where the evidence is closely balanced or where the error is so serious as to affect the fairness of the trial and challenge "the integrity of the judicial process." *Id.* at 187. Defendant relies solely on the second prong of the plain-error analysis. However, before we determine whether an error was plain, we must first determine whether any error occurred at all. *Id.*

¶ 16    Having considered the instruction given by the trial court, we hold that no error occurred at all. Quite simply, the instruction given by the trial court adequately conveyed the law to the jury. The omission of "of the contents" does not meaningfully affect the phrase "That at the time

the defendant [committed the prohibited act], he had been served notice of the contents of an order of protection or otherwise had acquired actual knowledge of the contents of the order." This is because the phrase "otherwise had acquired actual knowledge" makes it clear that the State is required to prove that the defendant must have had actual knowledge from receiving notice or otherwise acquired it in a different manner. That is, the latter phrase makes it clear that the defendant must have actual knowledge from receiving notice or *otherwise* acquire it in a different manner. It bears emphasizing that jury instructions must be read as a whole. *Parker*, 223 Ill. 2d at 501. Accordingly, we find unpersuasive defendant's argument that she was prejudiced by this omission.

¶ 17    Seeking to avoid this result, defendant asserts that this case is controlled by *People v. Hurtado-Rodriguez*, 326 Ill. App. 3d 76 (2001). In that case, this court considered a modification to the jury instruction defining the offense of harassment of a witness. *Id.* at 86-87. The pattern jury instruction allows a conviction if the defendant threatened the family member of a witness while the instruction actually given by the trial court in that case allowed a threat to "any individual" to suffice. *Id.* at 87-88. The defendant had allegedly made threats to multiple individuals, two of whom were not family members. We held that a properly instructed jury might have acquitted the defendant because it might have based its finding of guilt on the threats made to nonfamily members. *Id.* at 88-89. As such, we reversed the defendant's conviction. *Id.* at 89.

¶ 18    *Hurtado-Rodriguez* is clearly distinguishable from the instant case. In *Hurtado-Rodriguez*, the instruction given expanded the class of threatened individuals upon which a conviction could be based from family members to anybody. However, here, the term "otherwise" functions to make the "acquired actual knowledge" language applicable to the giving of notice—*i.e.*, defendant

received actual knowledge of the content of the order by notice or otherwise. Thus, we find *Hurtado-Rodriguez* to be of little guidance here.

¶ 19 Moreover, we find unpersuasive defendant's attempt to draw a distinction between being served with an order and being served with the contents of the order. Somewhat analogously, this court rejected a defendant's attempt to draw a distinction between knowledge of the contents of an order of protection and knowledge that the defendant was actually violating the order. *People v. Hoffman*, 2012 IL App (2d) 110462, ¶ 15. We held that this was a "distinction without any real difference," explaining, "When a defendant has knowledge of the contents of an order of protection, it necessarily follows that, when he does some act in contravention of the terms of the order of protection, he does so with knowledge that those acts are prohibited." *Id.* Similarly, when a defendant is served with an order, the defendant receives notice of the contents of the order because, *a fortiori*, the order itself contains its contents. For example, in this case, Deputy Randy Greer, of the Kendall County Sheriff's Department, testified that, based on records he generates when he serves an individual, he served defendant with "a stalking/no contact order" on January 15, 2016, at 8:50 a.m. He identified a copy of the order, which was admitted into evidence. The order plainly states, "That the respondent be ordered to stay at least 100 feet away from the petitioner, and Petitioner's residence." It specifies the address of the petitioner's residence, which is Hutson's home. Obviously, by being provided with this paperwork, defendant was provided with the contents of the order. Defendant concedes that Greer was not required to read the order to her. See *People v. Ramos*, 316 Ill. App. 3d 18, 23 (2000) ("We agree with the State that a verbatim reading of the entire contents of the order of protection is not necessary in order to put the defendant on notice of what conduct is prohibited."). She does not, however, explain how she believes that Greer could have served her with the contents of the order short of reading it to her.

In sum, like the distinction at issue in *Hoffman*, the difference between being "served with the order" and being "served with the contents of the order," under the facts of this case, is insignificant.

¶ 20    Consequently, we hold that the trial court committed no error in instructing the jury. Having found no error, we cannot find plain error.

¶ 21                                  B. SENTENCING

¶ 22    Defendant next argues that the trial court erred in determining that there were no mitigating factors present that were relevant to sentencing.  Specifically, defendant asserts that her conduct neither caused, threatened, nor was intended to cause serious physical harm.  Indeed, section 5-5-3.1(a)(1) of the Unified Code of Corrections (730 ILCS 5/5-5-3.1(a)(1) (West 2016)) lists as a factor in mitigation that "[t]he defendant's criminal conduct neither caused nor threatened serious physical harm to another."  Also, section 5-5-3.2(a)(2) (730 ILCS 5/5-5-3.1(a)(2) (West 2016)) sets forth as a mitigating factor that "[t]he defendant did not contemplate that his conduct would cause or threaten serious physical harm to another."

¶ 23    The State claims that defendant requested a 24-month term of probation, which is what the trial court imposed, so she cannot complain about it now.  See *People v. Carter*, 208 Ill. 2d 309, 319 (2003) ("Under the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error.").  However, our review of the record indicates that it was the State that requested defendant be sentenced to 24-months' probation (in addition to a term of imprisonment) while defendant simply requested an unspecified term of probation.  Hence, the State's argument lacks a foundation in the record.

¶ 24    The State also asserts that the record indicates that as a result of defendant's action, the victim suffered various physical ailments.  Indeed, the victim stated, "Physically, I have stomach

problems, tension and migraine headaches, insomnia and sleep deprivation, stress and panic-related problems." Thus, the victim described a number of physical problems caused by defendant's conduct. In her reply brief, without citation to authority, defendant contends that such indirect physical effects are not the sort of physical harms contemplated by the statute. However, our research points in a contrary direction. In *People v. Adams*, 168 Ill. App. 3d 588, 589-90 (1988), a court noted the general dangers of illicit drugs in finding that these mitigating factors did not apply where the defendant was convicted of an offense based on the delivery of controlled substances containing cocaine. Similarly, in *People v. McCain*, 248 Ill. App. 3d 844, 852 (1993), this court stated, "It is our opinion that the trial court correctly determined that the harm inherently caused by drug-related crimes rendered both of these mitigating factors inapplicable." Thus, indirect harms have been held to be a proper basis to find that the mitigating factors articulated in section 5-5-3.2(a)(1) and section 5-5-3.2(a)(2) inapplicable. Analogously, the mere fact that defendant caused physical harm to the victim in an indirect manner is a valid basis to conclude that these mitigating factors did not apply in this case.

¶ 25 Moreover, violating a no-contact order carries with it an obvious risk of a confrontation between the offender and the victim. In *People v. Hamilton*, 283 Ill. App. 3d 854, 864 (1996) (*rev'd on other grounds by People v. Hamilton*, 179 Ill. 2d 319 (1997)), which involved a burglary, the court found the mitigating factors at issue here inapplicable, explaining, "A threat of confrontation—and therefore violence and harm—is always present when an unauthorized entry is made in an occupied building." The trial court could reasonably conclude that a similar threat of confrontation existed in the instant case, where a defendant violates an order intended to keep two people apart.

¶ 26    Defendant contends that the trial court did not actually consider section 5-5-3.2(a)(1) and section 5-5-3.2(a)(2) in imposing a sentence. This is not the case. The trial court expressly ruled "specifically that none of the factors in mitigation would be applicable to this cause." Thus, the trial court considered and rejected all mitigating factors, including the two at issue here. This is not the same as failing to consider them. See *Hamilton* 283 Ill. App. 3d at 863 ("It is clear the court considered the mitigating factors, as evidenced by its discussion of them. It did not arrive at the factual conclusions the defendant would have preferred.").

¶ 27    Finally, we note that the imposition of a proper sentence is a matter lying withing the discretion of the trial court. *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19. An abuse of discretion occurs only where no reasonable person could agree with the trial court. *People v. Degorski*, 2013 IL App (1st) 100580, ¶ 72. Here, a reasonable person could conclude that the manifestations of physical harm suffered by the victim rendered the two mitigating factors inapplicable. Further, we note that defendant could have been sentenced to up to three years in the penitentiary. See 740 ILCS 21/125 (West 2016); 730 ILCS 5/5-4.5-45(a) (West 2016). Instead, defendant was sentenced to 24-months' probation. Defendant makes no persuasive argument as to why this sentence, which is well below the maximum that could have been imposed, is an abuse of discretion.

¶ 28                                    IV. CONCLUSION

¶ 29    In light of the foregoing, the judgment of the circuit court of Kendall County is affirmed.

¶ 30    Affirmed.