2024 IL App (2d) 230285-U
No. 2-23-0285
Order filed June 12, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CM-399 |
| ROBERT BARWICKI, | ) ) ) | Honorable Stephen L. Krentz, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We grant the appellate defender's motion to withdraw, as there are no potentially meritorious issues for appeal.

¶ 2    Defendant, Robert Barwicki, appeals his conviction of violating an order of protection (720 ILCS 5/12-3.4(a)(1)(i)(2) (West 2020)).[1] The Office of the State Appellate Defender was appointed to represent him on appeal. The appellate defender now moves to withdraw, claiming

_____

[1]The complaint cited an older version of the violation-of-an-order-of-protection statute (see 720 ILCS 5/12-30 (West 2010)).

there are no potentially meritorious issues for appeal. We agree. Therefore, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kendall County.

¶ 3                                    I. BACKGROUND

¶ 4     On September 26, 2021, defendant was charged by complaint with two counts of violating an order of protection. Defendant's jury trial began on July 13, 2023. Before jury selection, the State nol-prossed count II of the complaint.

¶ 5     Evidence presented at trial revealed that, on September 20, 2021, Katarzyna Barwicki, who goes by "Kasha," obtained an order of protection against her husband, defendant. At the time, defendant was in custody on an unrelated matter. A native of Poland, defendant testified that he could read "[v]ery little" English. The order of protection was in English and remained in effect until October 6, 2021. It prohibited defendant from, among other things, contacting Kasha via text message. Eddie Jackson, a process server for Kane County, testified that, on September 20, 2021, a corrections officer at the Kane County jail escorted him to the cell where defendant was housed and confirmed that the inmate in the cell was defendant. Jackson served defendant with the order of protection and, per the "standard procedure," explained from whom the order required defendant to stay away. Jackson, who could not speak Polish, spoke to defendant in English. Jackson identified his signature on the proof of service, which the State then introduced into evidence.

¶ 6     Defendant was released from custody on September 22, 2021. On September 25, 2021, Kasha received multiple texts from "Maz," which was the contact name for defendant that she stored in her phone. She recognized the phone number as defendant's. The texts were in Polish. Kasha, who spoke Polish, translated the messages to English for the jury. Although Kasha responded to the texts mostly in Polish, she also responded in English. Defendant's responses in Polish to her texts in English were sensical. The text exchange referenced the couple's property

and family members. For example, defendant asked Kasha for his wedding ring, referenced property the parties had in their garage, and named people in the couple's families. Defendant also asked Kasha not to tell anyone about the text exchange. During the exchange, Kasha took a picture of defendant's car, parked two blocks away from Kasha's home, and texted it to him. In a reply text, defendant threatened Kasha and her "entire family" with "consequences" if she did not follow his instructions regarding the car.

¶ 7 Defendant has lived in the United States for 30 years and speaks fluent Polish and broken English. He testified with the help of a Polish interpreter. In a few instances, defendant testified in English. He did not remember being served with the order of protection and denied texting Kasha while the order of protection was in place. He claimed he did not find out about the order of protection until October 2021. He also claimed that someone had hacked his phone and used it to send the texts. Although he recognized the number in the text exchange as his, he claimed that he did not use that phone regularly, opting instead to use one of his other four phones. Defendant admitted that he had prior convictions of felony aggravated battery and criminal damage to government supported property. The State submitted certified copies of those convictions.

¶ 8 The jury instructions included one that tracked verbatim Illinois Pattern Jury Instructions, Criminal, No. 11.77 (approved Dec. 8, 2011) (hereinafter IPI Criminal No. 11.77), which was the definition instruction for violating an order of protection and stated generally how that offense is committed. Another instruction adapted Illinois Pattern Jury Instructions, Criminal, No. 11.78 (approved Dec. 8, 2011) (hereinafter IPI Criminal No. 11.78)—the elements instruction for violating an order of protection—and specified what the State needed to establish beyond a reasonable doubt to prove defendant's guilt as charged in this case. Defendant, through trial counsel, specifically advised the trial court that he had no objection to these instructions. Neither

party requested, and the trial court did not *sua sponte* give, an instruction based on Illinois Pattern Jury Instructions, Criminal, No. 3.13 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.13), which provided that "[e]vidence of a defendant's previous conviction of an offense may be considered by [the jury] only as it may affect his believability as a witness and must not be considered by [the jury] as evidence of his guilt of the offense with which he is charged."

¶ 9     In closing argument, defendant argued that the State did not prove that he was served with the order of protection at the Kane County jail or that he sent the text messages that were the basis of the charges.

¶ 10    The jury found defendant guilty. Defendant moved for a new trial, arguing specifically that he was not proved guilty beyond a reasonable doubt. Defendant also argued generally that his due process and equal protection rights were violated. The trial court denied the motion. The court sentenced defendant to 18 months of probation and 30 days in jail, noting that defendant would not receive credit toward his 30-day sentence for any time served. Defendant, who was allowed to serve his jail sentence on weekends, finished serving the sentence on October 15, 2023. This timely appeal followed.

¶ 11                                  II. ANALYSIS

¶ 12    Per *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967), the appellate defender moves to withdraw as counsel. In his motion, counsel states that he read the record and found no issue of arguable merit. Counsel further states that he advised defendant of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts and an argument as to why this appeal presents no issue of arguable merit. We advised defendant that he had 30 days to respond to the motion. That time has passed, and defendant has not responded.

¶ 13    Counsel suggests four potential issues: whether (1) the State proved beyond a reasonable doubt that defendant violated the order of protection, (2) the jury was allowed to consider improper evidence, (3) the jury was properly instructed, and (4) the trial court erred when it refused to give defendant credit toward his sentence for time served. Counsel concludes that none of these issues have arguable merit. We agree.

¶ 14    First, it is not arguable that defendant was not proved guilty beyond a reasonable doubt of violating the order of protection. A defendant's conviction will be set aside on appeal only if the evidence against him is so improbable or unsatisfactory that it creates a reasonable doubt of his guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

¶ 15    To prove defendant guilty of violating an order of protection, the State was required to prove that he knowingly committed an act prohibited by a valid order of protection and did so after having been served notice of the content of the order or having otherwise acquired actual knowledge of it. 720 ILCS 5/12-3.4(a)(1)(i)(2) (West 2020). Those elements were proved beyond a reasonable doubt. Specifically, defendant was served with notice of the order while he was detained in the Kane County jail. The order of protection prohibited defendant from texting Kasha. The order was in effect on September 25, 2021, when defendant sent Kasha numerous texts from a number he admitted was his. Defendant denied that he had received the order of protection before sending the texts, but the jury could reasonably find that he was aware of the order's prohibitory scope, given Kasha's testimony that defendant told her not to tell anyone about the texts. Also, defendant's testimony that a hacker might have sent the texts could not explain the texts' references

to family matters. Although defendant testified that he could read "[v]ery little" English, his defense at trial was not that he could not understand the order of protection, but that he was not served with it at the Kane County jail and did not find out about it until after Kasha received the text messages in question. As the trier of fact, the jury was charged with resolving conflicts in the evidence and weighing any inconsistencies. See *People v. Hernandez*, 319 Ill. App. 3d 520, 533 (2001); *People v. Hruza*, 312 Ill. App. 3d 319, 325 (2000). We will not reassess the witnesses' credibility or reweigh the evidence, as it is not our function to retry defendant. See *People v. Patterson*, 314 Ill. App. 3d 962, 969 (2000). Viewing the evidence in the light most favorable to the State, as we must, we agree with appellate counsel that any claim that defendant was not proved guilty beyond a reasonable doubt is without arguable merit.

¶ 16    Second, it is not arguable that the jury was allowed to consider improper evidence. Counsel considered arguing on appeal that it was improper to allow Kasha to (1) read aloud in court the text message in which defendant threatened her and (2) translate the text messages to English for the jury. Neither issue was raised in the trial court. Thus, counsel recognizes that these potential claims are forfeited and that, to circumvent forfeiture, defendant would have to satisfy the plain error rule or establish that his trial counsel was ineffective for failing to raise these issues. See *People v. Miller*, 2014 IL App (2d) 120873, ¶¶ 16-18.

¶ 17    Under the plain error rule, a defendant needs to establish that (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "[the] error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). To assert a claim of ineffective assistance of counsel, a defendant must establish that (1) "counsel's representation fell below an

objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A defendant must satisfy both prongs of the *Strickland* test[,] and a failure to satisfy [either] prong[ ] precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35. Under either plain error or ineffective assistance, the defendant must first establish that error occurred. See *Miller*, 2014 IL App (2d) 120873, ¶ 19 ("[U]nder either [plain error or ineffective assistance of counsel], we first consider whether [the] defendant's proposed issue has merit.").

¶ 18    As for Kasha reading the threatening text message to the jury, counsel recognizes that defendant's sheer act of texting, regardless of the content, would violate the order of protection (see 720 ILCS 5/12-3.4(a)(1), (a)(2) (West 2020)). Nonetheless, as counsel further recognizes, "[m]ost [of the] text messages were relevant, as they established that it was [defendant] sending the messages." However, counsel submits that defendant's threat to Kasha was arguably irrelevant because it did not establish his identity or any other element of the offense. Counsel also notes that the danger of unfair prejudice arguably outweighed any probative value, as the threat cast defendant in a poor light. See Ill. R. Evid. 403 (eff. Jan. 1, 2011). However, while it is arguable that allowing the threat into evidence was error, it is not arguable that defendant could establish either plain error or ineffective assistance of trial counsel to circumvent the forfeiture of this issue. Specifically, as noted above, the evidence against defendant was not close; thus, it is not arguable that defendant could establish first-prong plain error. *Piatkowski*, 225 Ill. 2d at 565. It is also not arguable that defendant could establish second-prong plain error, because admitting the threatening text was not a structural error, as it was a "mere error[ ] in the trial process itself[,]" not an "error[ ] affect[ing] the framework within which the trial proceeds." *People v. Moon*, 2022

IL 125959, ¶ 29 (noting that second-prong plain error arises in limited circumstances, such as when there is "a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction"). Likewise, given the overwhelming evidence against defendant, it is not arguable that trial counsel was ineffective for failing to object to the admission of the threatening text, because the outcome of his trial would not have been different if the threatening text had not been admitted. See *People v. Evans*, 209 Ill. 2d 194, 220 (2004).

¶ 19    Nor was it arguably error to allow Kasha, a lay witness, to translate to English the texts defendant sent her. Error arises when a defendant objects to the translation of a statement, offers another translator to interpret the statement, and is denied the opportunity to present the alternative translation. See *People v. Salgado*, 366 Ill. App. 3d 596, 608 (2006). Here, nothing indicates that Kasha's translations were incorrect. Thus, it is not arguable that error arose in allowing Kasha to translate the texts. That said, even if error arose, it is not arguable that defendant could establish first- or second-prong plain error. Allowing Kasha to translate was not a structural error, and regardless of the content of the texts, the overwhelming evidence indicated that defendant violated the order of protection by texting Kasha numerous times. Likewise, because nothing indicates that trial counsel was aware of any problem with the translations, trial counsel was not ineffective for failing to object and offer an alternative translator. See *People v. Humphries*, 257 Ill. App. 3d 1034, 1043 (1994) ("An attorney cannot be said to be ineffective for failing to call a witness whose identity and potential testimony are, through no fault of the attorney, unknown to him or her.").

¶ 20    Third, it is not arguable that the jury was improperly instructed. Counsel asserts that he considered arguing on appeal that it was improper (1) not to give IPI Criminal No. 3.13, which admonished the jury that defendant's prior convictions could be considered only in assessing his

believability; and (2) to give the instructions based on IPI Criminal Nos. 11.77 and 11.78, as neither instruction provided that the State must prove that the defendant *knowingly* committed an act prohibited by the order of protection. As with the potential claim of whether the jury considered improper evidence, defendant has forfeited review of this potential instructions claim by failing to raise it below and, would need to establish plain error or ineffective assistance of counsel to circumvent his forfeiture. It is not arguable that defendant could establish either.

¶ 21    Concerning IPI Criminal No. 3.13, the trial court did not err when it did not *sua sponte* give the instruction. See *People v. Brandon*, 283 Ill. App. 3d 358, 364 (1996) (IPI Criminal No. 3.13 should be given only at the defendant's request where he has been impeached by proof of a prior conviction). Because the trial court did not err by failing to give the instruction *sua sponte*, defendant cannot establish plain error. See *Miller*, 2014 IL App (2d) 120873, ¶ 19. Likewise, trial counsel was not ineffective for failing to ask for the instruction, because nothing indicates that defendant told counsel he wanted the instruction. See *People v. Gibson*, 133 Ill. App. 2d 722, 726 (1971) ("It should be the prerogative of the defendant to determine whether [IPI Criminal No. 3.13] is beneficial to his defense or whether it would only serve to accentuate his past criminal record."). That said, even if it was error for counsel not to ask for the instruction, it is not arguable that defendant could establish either prong of the plain error rule or make a valid claim that counsel was ineffective. Specifically, it is not arguable that the error was one of the limited class of structural errors (see *Moon*, 2022 IL 125959, ¶ 29) or, as noted above, that the evidence was closely balanced. Moreover, it is not arguable that counsel's failure to ask for the instruction was unreasonable or that defendant was prejudiced when the instruction was not given. Rather, as counsel observes, trial counsel could have made a strategic choice not to request the instruction because it would emphasize defendant's criminal history. *Id.*; see also *People v. Sims*,

374 Ill. App. 3d 231, 267 (2007) ("It is well settled in Illinois that counsel's choice of jury instructions, *** is a matter of trial strategy."). And, as noted previously, because the evidence against defendant was overwhelming, it is not arguable that defendant was prejudiced.

¶ 22    As for the instructions based on IPI Criminal Nos. 11.77 and 11.78, counsel notes that neither instruction incorporates the entire *scienter* component of section 12-3.4 of the Criminal Code of 2012 (720 ILCS 5/12-3.4 (West 2020)). Specifically, while these instructions incorporate the statutory element that the defendant commit the prohibited act after he "has acquired actual *knowledge* of the contents of the order[ ]" (emphasis added) (*id.* § 12-3.4(a)(2)), neither incorporates the element that the defendant "*knowingly* commit[ ] [the] [prohibited] act" (emphasis added) (*id.* § 12-3.4(a)(1)). See IPI Criminal Nos. 11.77 and 11.78. As counsel recognizes, where the legislature obviously regarded these *scienter* elements as distinct, it was arguably error to submit instructions that did not contain both elements. See *People v. Hoffman*, 2012 IL App (2d) 110462, ¶ 15 (in prosecution under predecessor of section 12-3.4, which required that the defendant have actual knowledge of the order of protection but *not* that the defendant knowingly commit the prohibited act (see 720 ILCS 5/12-30(a) (West 2008)), failure to instruct the jury on the latter element was not error. "When a defendant has knowledge of the contents of an order of protection, it necessarily follows that, when he does some act in contravention of the terms of the order of protection, he does so with knowledge that those acts are prohibited.").

¶ 23    However, it is not arguable that the error constituted plain error or that trial counsel was ineffective for failing to object to the instructions. Defendant specifically said he did not object to the instructions; therefore, he cannot raise a plain error claim on appeal. See *People v. Jones*, 2023 IL 127810, ¶ 40 (trial court's decision not to give instruction on knowledge in answer to jury's request for a definition "[was] not subject to plain error review because [the] defendant not only

failed to object to the trial court's answer but affirmatively acquiesced to that answer"). Moreover, although trial counsel's failure to object to the instructions was arguably unreasonable, it is not arguable that defendant was prejudiced, as the evidence against him was overwhelming.

¶ 24    Fourth, no argument can be made that the trial court erred in sentencing defendant to 30 days in jail without giving him credit toward his sentence for time served. Because defendant has served his 30-day sentence, any such claim is moot. See *People v. Jackson*, 199 Ill. 2d 286, 294 (2002) ("A case becomes moot where the occurrence of events since filing of the appeal makes it impossible for the reviewing court to render effectual relief."). We consider moot issues only if an exception to the mootness doctrine applies. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). None of the exceptions apply here. See *In re Daniel K.*, 2013 IL App (2d) 111251, ¶ 16 ("[T]he recognize[d] exceptions to the mootness doctrine [are]: (1) the public-interest exception, applicable where the case presents a question of public importance that will likely recur and whose answer will guide public officers in the performance of their duties, (2) the capable-of-repetition exception, applicable to cases involving events of short duration that are capable of repetition, yet evading review, and (3) the collateral-consequences exception, applicable where the order could have consequences for a party in some future proceedings."). Accordingly, this potential claim is without arguable merit.

¶ 25                                    III. CONCLUSION

¶ 26    After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kendall County.

¶ 27    Affirmed.